**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BURKE OLDSMOBILE INC., Respondent.**

**No. 259, Docket 26626.**

United States Court of Appeals Second Circuit.

Argued Feb. 17, 1961.

Decided March 27, 1961.

respondent, Burke Oldsmobile Inc., to "cease and desist" from recognizing Local 868 of the Teamsters Union as the bargaining representative of its employees. 128 N.L.R.B. No. 12. The case involves a contest between a Local of the Teamsters Union and a Local of the United Autoworkers Union as to which shall be the bargaining representative of the respondent's employees. It is a corporation engaged in selling, "servicing" and repairing automobiles, and we shall speak of the first union as Local 868 and of the second as Local 259. The Burke Company had recognized Local 259 as its employees' bargaining agent by a contract executed in 1953, which expired in July, 1955. That union had not, however, abandoned its interest in the matter, and in March, 1958, it procured cards from 27 out of 41 of the employees authorizing it to be their bargaining representative. There was later some oral communication between the officials of this union and the employer in which however nothing was concluded, and on September 24th some officials of Local 259 wrote to the employer that "as the bargaining representative of your employees" they "would like to * * * discuss" "recognition" of that union. Meanwhile Local "868" had become active, seeking to be elected as the bargaining representative, and by October 2 the officials of this union told the employer that they had the cards of 21 of the 41 members, and on the 6th that they had 29.

The employer did not answer the letter of Local 259 asking for a meeting, nor did it ask Local 259 to prove its claim that it had a majority. On October 6, the employer called a meeting of all the employees "on company time." Burke, the president, and two of his subordinates were present at this meeting, but no representatives of either Local. Burke told the men that, if they wished a union, "he would abide by their choice," but he remained in the room when the vote was taken by a show of hands. A majority voted for Local 868, indeed there was testimony that the vote was unanimous, and the employer thereupon recognized

Samuel M. Singer, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., Washington, D. C., for petitioner.

Irving T. Bush, Miller & Bush, New York City, for respondent.

Before CLARK, SMITH and HAND, Circuit Judges.

HAND, Circuit Judge.

This case comes up on a petition of the Labor Board for an order requiring the

that Local as the employees' bargaining representative. Before this—on October 3—there had been a meeting of all the employees at which officials of both unions had been present, and enough friction developed to make it desirable for the employer to call in police in order to prevent possible disorder.

Local 259 filed a petition under § 10(a), alleging a violation of § 8(a) (1) and (2), 29 U.S.C.A. §§ 158(a) (1, 2), 160(a) by the employer, and the question is whether the conditions we have described support the Board's finding that the employer had interfered with the employees in their right to organize. Burke had consulted with the officials of Local 868 late in September, but had failed to deal with those of the other union at any time. On October 6, Burke, although, as we have just said, he disclaimed to all the employees any interest in the outcome of the election which was about to take place, remained in the room while the vote was taken, so that it was possible for him to learn how the election was being conducted, and how the employees voted. No petition for an election had been filed by either Local, or by the employer as provided by § 9(c) (1), but it does not follow that the occasion was not one which gave the Board power to act under § 8(a) (1) and (2). Section 10(a) empowers it to intervene to prevent any "unfair labor practice" and that presupposes a preliminary decision as to what are the conditions necessary to a fair election as to which its decision, though not indeed final, should have much weight.

█ We think that the case at bar was such an occasion. The employer had disregarded the request of Local 259 for an interview, in spite of the fact that the Local had, not only previously been the bargaining representative, but only six months earlier had procured a majority of cards. A new union had intervened and a hot dispute was in progress. Burke and his assistants, being present in the election room, were likely to be informed of how the employees voted and to remember who voted for their favorite, if they had one. We agree that, although

the employer is not shown to have committed any positive act to dominate Local 868, the Board was justified in thinking that for the reasons we have given the election is not shown to have been sufficiently free from possible influence by the employer to insure an untrammeled vote. Hence it follows that the Board's order was right in directing a new and secret election. When a petition has already been filed, the Board has so decided, In Re Midwest Piping & Supply Co., Inc., 63 N.L.R.B. 1060, 1070, and we can see no reason why the pendency of a petition should be determinative. We affirm the Board's order, ordering the respondent to cease and desist from recognizing the Local 868 "until such labor organization shall have been duly certified" by the Board.

█ The second point raised upon the appeal is that portion of the order which requires the employer to reimburse his employees for all dues and other money paid to Local 868 while it was the bargaining representative. Such a provision has been the occasion of much controversy in the courts; it rests upon the theory that if the dues have been exacted by means of a union which gained its authority from some unlawful action of the employer, they should be returned to the credit of the employees from whom they ought not to have been exacted. If applied rigidly, that result would follow no matter what acts of the employer mistakenly caused the union to be recognized. However, the only instances in which we have required dues to be so reimbursed are N. L. R. B. v. Revere Metal Art Co., Inc., 2 Cir., 280 F.2d 96 and N. L. R. B. v. Local 294, I. B. T., 2 Cir., 279 F.2d 83, of which we said in N. L. R. B. v. Marcus Trucking Co., Inc., 286 F.2d 583, 595, that in the Revere case the "non-unionized employees had been subjected to 'coercion in the most literal sense.'" In the case at bar there had been a long period without any union representation at all, and any pressure that the employer exercised was, so far as appears, without "coercion" of any kind upon employees. We think that in the case at bar the pro-

vision for reimbursement should not stand.

The Board's order is affirmed with that exception.